## Moore *versus* Hanover Junction and Susquehanna Railroad Company.

1. A contract of subscription to stock provided for the building of the H. J. & S. Railroad according to the survey made by the P. & R. Railroad Company. The original route ran within five hundred feet of M.'s mill. This route was changed so as to make it run about twelve hundred feet from said mill. M. contended that this change was material; that it was the location of the original survey which induced his subscription and that his interests were seriously compromised by the alteration, and in a suit against him on his subscription offered evidence to this effect, which the court rejected. *Held*, that the court erred, and that he should have been permitted to show that the alteration in the route was, as to him and his interest, a material variation.

2. Miller *v.* Hanover Junction & Susquehanna Railroad Co., 6 Norris 95, distinguished.

May 5th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Error to the Court of Common Pleas of *Lancaster county*: Of May Term 1880, No. 118.

Assumpsit by the Hanover Junction and Susquehanna Railroad Company against Michael Moore, to recover on a subscription to the stock of said company. Defendant pleaded non-assumpsit.

By an act approved March 28th 1872, the Hanover Junction and Susquehanna Railroad Company was created a corporation, and it was so decided in Railroad Co. *v.* Haldeman, 1 Norris 36. It was authorized to build a railroad from " a point at or near Hanover Junction, in York county, extending to the west bank of the Susquehanna river, in York county." It was also authorized " to build a bridge across the Susquehanna river at the most convenient point, to enable them to connect with any other railroad constructed, or that may hereafter be constructed, on the east side thereof, and to extend their railroad on the west side of said river to said bridge, and across on the same to the points of annexion with such other railroads as aforesaid."

The company has not built any railroad on the west side of the river, nor any bridge across the river, but it took subscriptions towards what it commonly calls " The eastern extension of the Hanover Junction and Susquehanna Railroad," which subscriptions contained the following conditions :

" And it is further agreed, that we, the citizens of Marietta and vicinity, do subscribe the amount opposite our respective names, on the following conditions, viz :

" That the amount hereby subscribed shall be devoted to the building and equipping of the extension of the Hanover Junction and Susquehanna Railroad, according to the survey made by the Philadelphia and Reading Railroad Company, the same having been adopted at the last meeting of the Hanover Junction and Susquehanna Railroad Company, and it is further agreed, that

[Moore v. Hanover Junction Railroad Co.]

there shall be a first-class station erected in Marietta by said company.

"Further, the said subscription shall only be paid when the sum of $100,000 shall have been subscribed for this purpose, by the citizens residing at or near the line of said above extension in Lancaster county."

This route, commonly called the Reading survey, was well known; it passed through the land of M. H. Moore, defendant, and about five hundred feet from his flour-mill, and, at the time he subscribed in 1873, was staked out through his land, and he was assured that it was under contract and would be built. After he subscribed, and after the road was under contract for grading, the company changed the route, abandoned the route of the "Reading survey," and adopted and graded another line twelve hundred feet farther away from Moore's mill, and entirely off his land, and changed the terminus at the Reading and Columbia Railroad nearly a mile, and the change Moore alleged was injurious to him. This was done without any consultation with or consent of Moore, and without any waiver by him of the conditions in the subscription.

At the trial, before Livingston, P. J., the defendant offered to show that if the road had been built, as staked out through his property at the time he subscribed, it would have been an advantage to his mill property and his milling operations, and that as it is, graded outside of his land and further away from his mill, it is of no advantage.

Plaintiff objected and the court rejected the offer. (Eighth assignment of error.)

Also, to show that at the time he made the subscription he would not have made it, if the road was to be built on any other route than the one staked out through his property, and that this road as staked out through his property was the inducement for him to make the subscription.

Objected to and objection sustained. (Ninth assignment.)

Also, to ask a witness the following question, which the court disallowed: "Would you have subscribed at the time you did, if you had been informed or had known that the road would be graded or built where it now is, and not on the line that was then staked out?" (Seventh assignment.)

The first point of the plaintiff, which the court affirmed, was as follows: If the jury believe that the railroad was to be built between some point on the Susquehanna river and the Reading and Columbia railroad, in accordance with the terms of the charter of the corporation plaintiff the defendant having failed to show that the modifications of the original survey were not in accordance with what was the understanding of the subscribers as to the real object to be effected, and having failed to show that they were not

[Moore *v.* Hanover Junction Railroad Co.]

useful to the public and were prejudicial to the company, the verdict must be for the plaintiff. (First assignment.)

The court directed the jury to find for the plaintiff. (Sixth assignment of error.)

The first point of the defendant, which the court refused, was as follows: The condition in the subscription signed by the defendant, that the amount thereby subscribed shall be devoted to the building and equipping of the extension of the Hanover Junction and Susquehanna Railroad, according to the survey made by the Philadelphia and Reading Railroad Company, if said location was the inducement to the defendant's subscription, is valid and binding on the plaintiff, and any change made by the plaintiff of such location or line injurious and disadvantageous to the defendant would release the defendant from his subscription. (Third assignment.)

Verdict accordingly, when defendant took this writ and alleged that the court erred, inter alia, as set forth in the foregoing assignments of error.

*E. D. North* and *H. M. North*, for plaintiff in error.—In Miller *v.* Hanover Junction & Susquehanna Railroad Co., 6 Norris 95, it was decided that the subscriber to this same subscription paper could not set up a parol condition for a line different from that mentioned in the subscription, that he could not set up a condition not in the subscription, and now the court below decides that Moore cannot set up the one that is in the paper. Moore being bound by the written contract, the company and the other subscribers must also be bound. If he could not show a different contract, why should they be allowed to set aside their agreement made with him, and enforce on him an agreement of their own, to which he never gave his consent and which would be of no advantage whatever to him and which he never would have made. The court below affirmed plaintiff's first point and thereby said that it was the duty of the defendant "to show that the modifications of the original survey were not in accordance with what was the understanding of the subscribers as to the real object to be effected, and to show that they were not useful to the public and were prejudicial to the company." In the Miller case, the court said the understanding of the subscribers was in the written subscription, and no other could be shown, and now the court below says Moore should have shown that there was no other than the one in the writing—that he could not establish his contract by producing the writing, but must show there was no other understanding. Any change in the route material or injurious to the subscriber, releases him: Plank Road Co. *v.* Arndt, 7 Casey 317; Culey *v.* Railroad Co., 30 P. F. Smith 363; Miller *v.* P. & C. Railroad Co., 4 Wright 239.

The offers of evidence were to show that the line of the Reading survey was the inducement to Moore to subscribe, that he would not

[Moore v. Hanover Junction Railroad Co.]

have subscribed to the line as graded, and that the former would have been a benefit, and that the latter was of no advantage to him.

We admit that under our theory if the defendant could rest his defence on the violation of the written conditions by the company, the offers would be irrelevant, but under the theory of the court that the violation by the company must be a material one, they were clearly admissible: Caley v. Railroad Co., *supra*. See also Plank Road Co. *v.* Arndt, *supra*.

*George Nauman, William B. Given,* and *S. H. Reynolds,* for defendant in error.—The authorities cited by the plaintiff in error are all applicable to a case where a contract is made between a subscriber and the company alone, and where there are no other parties interested. In this case the contract was made with others. We submit that, in the first place, to release a subscriber, there must be an alteration of the termini, or of a material part of the route. In Caley v. P. & C. Railroad Co., 30 P. F. Smith 369, it is said that to effect a release, the company must determine to abandon the termini or some material part of the route. And in Plank Road Co. *v.* Arndt, 7 Casey 317, it is held that there must be an alteration of one of the termini to discharge the subscriber. In this case there was no change of the termini, or alteration of any material part of the route. In fact, there is no case in which it has been held that a change of intermediate points, if not material to the enterprise, was sufficient to release a party subscribing. But in a case like this, we contend that where there is an alteration of the route, it must, to avail any one, be one which discharges all. There must be such a material change in the enterprise as discharges all. A mere inconvenience to one is not enough. Modifications and improvements useful to the public and beneficial to the company and in accordance with the understanding of the subscribers as to the real object to be effected, do not impair the contract of subscription: Everhart *v.* Railroad Co., 4 Casey 353.

Mr. Justice GORDON delivered the opinion of the court, May 17th 1880.

The main principles involved in this case were examined and passed upon in the case of the Hanover Junction and Susquehanna Railroad Co. *v.* Haldeman, 1 Norris 36. There, with the same corporation and same subscription list, as in the case now under consideration, it was, by this court, determined that the defendant's subscription was properly treated as conditional, that the plaintiff had the power to bind itself to the performance of the stipulations contained in such subscription, and that a want of performance thereof by the company would release the subscriber. In like manner it was held, in Caley *v.* The Philadelphia and Chester

County Railroad Co., 30 P. F. Smith 363, that where the sub-
scription paper set out the termini and route of the proposed im-
provement, a material variance from either would operate as a
release of a subscriber.   As a reason for such conclusion it was
said : " If the above-stated doctrine be not correct, then has the
defendant no remedy ; for, as the directors, in changing the route
of their road, are acting within the power conferred by the charter,
he cannot prevent such change, though violative of the terms of
the contract.   He, therefore, occupies much the same position, in
which, as we have shown, the general stock subscriber is placed
when such change is made by virtue of an Act of Assembly."
Following these authorities, and the conclusion necessarily results,
that the court erred in not permitting the defendant to show that
the alteration made by the company in the original route of its
road, was, as to him and his interests, a material variation.   The
written contract to which he put his name, provided for the build-
ing of the extension of the Hanover Junction and Susquehanna
Railroad, " According to the survey made by the Philadelphia
and Reading Railroad Company," and this ran, it is said, within
five hundred feet of the defendant's mill.   If then this was the
contract of the parties, on what ground may the plaintiff recede
from its part of the bargain and yet hold the defendant ?   Is it on
the ground that a change of a few hundred feet from the original
survey is immaterial, and, therefore, the defendant is not harmed ?
But this is the very point of the controversy, and who is to deter-
mine it ?   The defendant contends that this change was material ;
that it was the position of the original survey which induced his
subscription, and that his interests are seriously compromised by
the alteration.   If, as was held in Everhart *v.* The Railroad Co.,
4 Casey 339, per WOODWARD, J., an essential modification in the
charter of a company, either as to its objects or methods of execu-
tion, will release a general subscription, much more will the direct
act of the company, destructive of the terms and conditions of its
own contract, work such release.   To all the subscribers to the
stock of the corporation plaintiff but the defendant the alteration
complained of might be indifferent or even advantageous, hence,
they could not be heard to complain, whilst as to him, it might be
very injurious : a material violation of his contract.   To this con-
clusion the case of Miller *v.* Railroad Co., 6 Norris 95, has been
opposed, but this case and the one in hand are as wide apart as the
poles.   In that case the defendant, Miller, set up a secret parol
condition in order to defeat his subscription, but it was held that
he could not be permitted so to do, on the ground that it would be
unjust and a fraud upon his co-subscribers to permit him, on such
grounds, to escape responsibility, and thus throw upon them an
additional burthen.   But the defendant, in the case in hand, is
attempting to set up no secret parol arrangement, but a condition

*[Moore v. Hanover Junction Railroad Co.]*

found in the subscription paper itself, and one to which all knew the company was to be held. We have, therefore, no hesitation in sustaining the 3d, 6th, 8th and 9th exceptions of the plaintiff in error. Not so the 7th exception. The defendant might have been asked whether or not the line of the proposed road, as found upon the ground running through his land, was an inducement for his subscription, but it partakes too much of the character of guesswork for any one to undertake to say what he would have done under circumstances at the time unknown and unthought of. The plaintiff's first point ought to have been refused; the doctrine involved in it, as a general rule, is no doubt correct, but it is not applicable to the present case without material modification. The remaining exceptions are dismissed as containing nothing tending to convict the court of error.

The judgment is reversed and a new *venire* ordered.